CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 30 2022

JULIA C. DUDLEY, CLERK
BY:  s/ H. MCDONALD
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR WESTERN DISTRICT OF VIRGINIA
### Danville Division

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY<br>One Park Circle<br>P.O. Box 5001<br>Westfield Center, Ohio 44251-5001<br><br>       Plaintiff,<br><br>v.<br><br>ATM STORAGE, LLC<br>2725 Franklin Turnpike, Suite C<br>Danville, Virginia  24540<br>    **Serve:**<br>    Robert T. Vaughan, Jr.<br>    Registered Agent<br>    772 Main Street<br>    Danville, Virginia  24541<br><br>And<br><br>STATE STORAGE VA, LLC<br>228 Park Avenue South, Suite 85473<br>New York, New York 10003-1502<br>    **Serve:**<br>    Carlton James Bergeron, Jr.<br>    Registered Agent<br>    2085 Rives Road<br>    Martinsville, Virginia  24112<br><br>       Defendants. | Case No.   4:22CV00021 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Westfield Insurance Company (hereinafter "Westfield"), by counsel, pursuant to

28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and the Local Rules of the

United States District Court for the Eastern District of Virginia, states as follows for its Complaint

for Declaratory Judgment against defendants ATM Storage, LLC ("ATM Storage") and State

Storage VA, LLC ("State Storage", and together with ATM Storage, "Defendants").

## PARTIES

1.      Plaintiff Westfield is a multi-line insurance carrier formed and existing under the laws of the State of Ohio, with its principal place of business located in Westfield Center, Ohio. Westfield, therefore, a citizen of the State of Ohio and is not a citizen of Virginia. Westfield submits itself to the jurisdiction of this Court.

2.      Defendant ATM Storage is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal office located at 2725 Franklin Turnpike, Suite C, Danville, Virginia, 24540.

3.      Defendant State Storage is a limited liability company organized and existing under the laws of the State of Florida, with its principal office located at 228 Park Avenue South, Suite 85473, New York, New York, 10003.

4.      Defendant ATM Storage owned a self-storage facility located at 2085 Rivers Road, Martinsville, Virginia, 24112 (the "Property"), which Property is the subject of this litigation.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.      The venue of this action is properly predicated on 28 U.S.C. § 1391 and Rules 2(a) and 2(b) of the Local Rules of the U.S. District Court for the Western District of Virginia, in that jurisdiction is founded on diversity of citizenship and this action is brought in the judicial district and division in which a substantial part of the events or omissions giving rise to the claim

occurred; in which at least one defendant resides or does business; and/or in which at least one defendant is subject to personal jurisdiction; including but not limited to the location of the Property and the location of the Registered Agents for both Defendants.

## BACKGROUND

7.      Plaintiff Westfield issued a policy of Business Owners insurance to ATM Storage bearing policy number BOP 0 603 31V, effective from December 4, 2019, through December 4, 2020 (the "Insurance Contract").

8.      A certified copy of the Insurance Contract is attached hereto as **Exhibit 1** and is incorporated by reference.

9.      The Insurance Contract was the first such policy of Business Owners insurance issued by Westfield to ATM Storage, and was not a renewal of a prior insurance contract or policy.

10.     Prior to the issuance of the Insurance Contract by Westfield, ATM Storage was insured under a business owners insurance policy issued by Donegal Mutual Insurance Company ("Donegal").

11.     On or about February 23, 2021, ATM Storage notified Westfield of alleged hail damage at the Property and filed a claim (the "Claim") with Westfield.

12.     Westfield assigned claim number 0002217472 to the Claim.

13.     In its notice to Westfield, ATM Storage alleged that a hail storm caused the reported damage to the Property on May 24, 2020.

14.     On or about March 4, 2021, as part of its investigation of the Claim, Westfield performed a search of the Insurance Services Office ("ISO") claim database, which did not reveal any reference to an earlier claim at the Property.

15.     ATM Storage was represented by a public adjuster, Josh Hansen, with The

Adjustment Firm.

16.     Westfield engaged an independent adjustment company, RYZE Claims Solutions ("RYZE"), to complete an inspection of the Property on Westfield's behalf.

17.     RYZE completed an inspection of the Property on March 8, 2021.

18.     RYZE reported to Westfield that it could not locate information regarding a hail storm on May 24, 2020, as reported by ATM Storage.

19.     RYZE did advise Westfield that a hailstorm appeared to have occurred on April 8, 2020, which approached the Property from the east.

20.     RYZE adjuster Ellen Douglas advised Westfield that "I believe the property was struck by a hailstorm on the reported date of loss."

21.     Ellen Douglas of RYZE also stated the she believed that the doors on the east side of the Property showed signs consistent with being hit by hail coming from the east.

22.     Ellen Douglas of RYZE also stated that she could not identify any damage to the metal roofs at the Property that would have been consistent with hail damage.

23.     RYZE prepared an estimate to repair the affected doors at the Property, identifying the replacement cost of the alleged damage as $183,339.66, less depreciation in the amount of $50,860.10, resulting in an actual cash value of the payment in the amount of $131,479.56, after applying the $1,000 policy deductible.

24.     On May 4, 2021, Westfield issued a letter to ATM Storage to advise ATM Storage of the results of the RYZE inspection, including the identification of damage to the east side doors, but not to the walls or roofs at the Property.

25.     Also on May 4, 2021, Westfield issued a letter to ATM Storage that explained the basis for its anticipated payment and the process for ATM Storage to seek the full replacement

cost coverage under the provisions of the Insurance Contract.

26.    Complete and accurate copies of Westfield's May 4, 2021 letters are attached as **Exhibit 2** and **Exhibit 3** and are incorporated by reference.

27.    On or about May 11, 2021, Westfield issued an email to Josh Hansen to inform Mr. Hansen that Westfield was performing a title search of the Property to ensure that all financial interests in the Property were identified prior to issuance of the Claim payment.

28.    Upon completion of the title search, Westfield learned that the Property had been sold to State Storage and began to investigate that sale.

29.    By email dated May 24, 2021, Bankers Insurance Agent Dot Spangler Baynes provided a copy of an Assignment (the "Assignment") from ATM Storage to State Storage.

30.    A complete and accurate copy of the Assignment as received by Westfield is attached as **Exhibit 4** and is incorporated by reference.

31.    The Assignment is signed on behalf of State Storage by Abel Sng as Manager of State Storage.

32.    After evaluating the Assignment, Westfield issued payment on June 17, 2021, to "The Adjustment Firm & ATM Storage LLC" for the actual cash value of the Claim in the amount of $131,479.56, based upon the conclusions of RYZE.

33.    On or about July 28, 2021, Josh Hansen of The Adjustment Firm asked Westfield to reconsider its assessment and denial of the claim for hail damage to the roofs of the Property.

34.    On or about August 6, 2021, Westfield asked Josh Hansen of the Adjustment Firm to provide documentation to support his assertion of hail damage to the roofs of the Property.

35.    On or about August 9, 2021, Josh Hansen of the Adjustment Firm sent Westfield a report dated February 21, 2021 (the "Hansen Report"), which included 13 photographs

purporting to show damage to HVAC units and roofing at the Property.

36.     The photographs in the Hansen Report are dated December 6th, 2020 and indicate that the "creator" of the photographs was Troy Johnson.

37.     On or about August 10, 2021, Westfield engaged the services of Rimkus Consulting Group, Inc. ("Rimkus"), an independent engineering firm, to again inspect the Property, in light of the photographs provided by Mr. Hansen.

38.     Rimkus engineer David D. Zimpel, P.E., inspected the Property on or about August 26, 2021.

39.     Following his inspection of the Property, David Zimpel provided a report to Westfield, dated September 9, 2021 (the "Rimkus Report"), which provided the following conclusions:

1.     Hail with a maximum diameter of approximately ½ inch had occurred at the ATM Storage, LLC property.  However, the hail did not have sufficient size or velocity to cause damage to the wall/metal roof panels.  Similarly, the hail did not have sufficient size or velocity to cause damage to the roll-up doors.  The service life of the metal walls, roofing, and roll-up door material at the ATM Storage, LLC facility had not been reduced due to hailstone impact.

2.     Questions remained regarding the reported loss date.  Our research indicated no hail occurred in the vicinity of the subject property on the reported loss date (May 24, 2020).  Based on the weather data reviewed, it would be reasonable to conclude that the most recent hail event that caused minor cosmetic damage to the metal at the property occurred on May 3, 2016, during which 1.0-inch-diameter hail was reported approximately 3 miles south of the subject property.

40.     Following receipt of the Rimkus Report, Westfield conducted a second search of prior claims filed for the Property and this time was able to locate the information related to a prior claim for hail damage at the Property.

41.     Westfield discovered that Josh Hansen with The Adjustment Firm, on behalf of ATM Storage, had filed a claim for hail damage at the Property with Donegal on or about January 21, 2021 (the "Donegal Claim").

42.     ATM Storage filed the Donegal Claim with a reported date of loss of May 10, 2018.

43.     By letter dated February 9, 2021, Donegal denied the Donegal Claim on the grounds that, to the extent the damage occurred on the reported date of loss, May 10, 2018, that loss occurred more than two years before the loss was reported to Donegal, and the two-year contractual limitation period in the Donegal policy had expired.

44.     In its denial letter, Donegal identified another potential date on which hail may have occurred at the Property – May 24, 2020 – but that date was after the termination of the Donegal policy.

45.     Following receipt and review of the inspection report provided by Rimkus, and in light of the Donegal Claim, Westfield engaged Haag Engineering Co. to perform detailed weather data analysis to clarify the dates of any potential weather events between the inception of the Westfield Insurance Contract and August 26, 2021, that could have included hail large enough to damage the Property.

46.     Haag engineer Christine Diane Alfano, Ph.D., P.E., CCM, prepared a report dated December 10, 2021, which concluded as follows:

1.      There were numerous thunderstorm events at the ATM Storage facility between December 4, 2019, and August 26, 2021.

2.      Storms on May 24, 2020, and July 23, 2020, had reflectivities between 50-55 dBZ and HCA indications of small hail (less than 1-inch) at the site.  However, there was no indication that hail occurred on these dates.  There were not hail reports and site inspections

performed by Rimkus Consulting Group on August 26, 2021, indicated no spatter was present.

3.      While thunderstorms occurred at the property between December 4, 2019, and August 26, 2021, these storms were not responsible for the shallow, rounded dents described by Rimkus Consulting Group in their September 9, 2021, report.

47.    In light of the Rimkus Report and the Haag Report, Westfield began to consider whether it had improperly made payment to ATM Storage for the indentations to the east-side doors at the Property, and continued its investigation of the Claim.

48.    By letter dated January 13, 2022, Westfield summarized the history of the Claim to that point and, in light of the uncertainty surrounding the date of loss and the circumstances of the Donegal Claim, Westfield requested that ATM Storage submit a signed, sworn statement in proof of loss.

49.    By electronic mail dated February 24, 2022, Josh Hansen of the Adjustment Firm provided to Westfield a Sworn Statement in Proof of Loss (the "Proof of Loss") dated February 22, 2022, and signed by Abel Sgn.

50.    A complete and accurate copy of the Proof of Loss is attached as **Exhibit 5** and is incorporated by reference.

51.    The Proof of Loss seeks damages in the amount of $1,654,554.76 in connection with the Claim.

52.    By electronic mail dated March 8, 2022, Westfield asked Josh Hansen of The Adjustment Firm to identify the person who had signed the Proof of Loss.

53.    By electronic mail dated March 9, 2022, Josh Hansen of The Adjustment Firm responded to Westfield's request for the identity of Abel Sng by stating that Mr. Sng was "the new owner of the Property."

8

54.     Westfield also examined the information provided on the Assignment from ATM Storage to State Storage and confirmed that Abel Sng was identified as the manager of State Storage.  **See Exhibit 4.**

55.     ATM Storage did not provide a Sworn Statement in Proof of Loss in response to Westfield's request.

56.     Upon information and belief, Defendant ATM Storage sold the Property to Defendant State Storage on or about March 29, 2021.

57.     The Proof of Loss states that State Storage became the new owner of ATM Storage on April 20, 2021.

58.     Upon information and belief, Defendant ATM Storage assigned its rights to recover under the Policy to State Storage pursuant to the Assignment. **See Exhibit 4.**

59.     ATM Storage did not seek Westfield's written approval for the Assignment of the Claim to State Storage prior to the Assignment.

60.     ATM Storage did not notify Westfield of the sale of the Property.

61.     Westfield has continued to investigate the Insurance Claim under a complete and continuing reservation of rights.

## THE INSURANCE CONTRACT

62.     In relevant part, the Westfield Insurance Contract is a Businessowners insurance contract which includes in relevant part first-party property coverage pursuant to the terms, conditions, exclusions, limitations, definitions, and other provisions of the Insurance Contract.

63.     The Insurance Contract provides the following insuring agreement between Westfield and ATM Storage, with respect to first-party property coverage:

**BUSINESSOWNERS COVERAGE FORM (Form BP 00 03 07 13)**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

**…**

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** - Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** - Liability.

**SECTION I - PROPERTY**

**A.**     **Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the declarations caused by or resulting from any Covered Cause of Loss.

**1.**     **Covered Property**

Covered Property includes Buildings as described under Paragraph **a.** below, Business Personal Property as described under Paragraph b. below, or both, depending on whether a Limit Of Insurance is shown in the Declarations for that type of property. Regardless of whether coverage is shown in the Declarations for Buildings, Business Personal Property, or both, there is no coverage for property described under Paragraph 2. Property Not Covered.

**a.**     Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

…

**3.**     **Covered Causes of Loss**

Direct physical loss unless the loss is excluded or limited under Section I – Property.

**…**

**Exhibit 1,** Form BP 00 03 07 13, p. 25 of 56.

64.     The Insurance Contract also provides a number of exclusions, including but not limited to the following:

10

**B.**  **Exclusions**

...

**2.**  We will not pay for loss or damage caused by or resulting from any of the following:

...

**f.**  **Dishonesty**

Dishonest or criminal acts (including theft) by you, anyone else with an interest in the property, or any of your or their partners, "members", officers, "managers", employees (including temporary or leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)**  Applies whether or not an act occurs during your normal hours of operation;

**(2)**  Does not apply to acts of destruction by your employees (including temporary or leased employees) or authorized representatives; but theft by your employees (including temporary or leased employees) or authorized representatives is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

...

**k.**  **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

...

**Exhibit 1,** Form BP 00 03 07 13, p. 21 of 56.

65.   The Insurance Contract also provides a number of conditions, including but not limited to the following, that apply to loss to Covered Property:

11

E.    **Property Loss Conditions**

…

3.    **Duties In The Event Of Loss Or Damage**

a.    You must see that the following are done in the event of loss or damage to Covered Property:

…

(2)    Give us prompt notice of the loss or damage.  Include a description of the property involved.

(3)    As soon as possible, give us a description of how, when and where the loss or damage occurred.

…

(7)    Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8)    Cooperate with us in the investigation or settlement of the claim

4.    **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a.    There has been full compliance with all of the terms of this insurance; and

b.    The action is brought within two years after the date on which the directphysical loss or damage occurred.

5.    **Loss Payment**

In the event of loss or damage covered by this policy:

…

c.    We will not pay you more than your financial interest in the Covered Property.

...

F.    **Property General Conditions**

…

3.    **No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

12

> 4.     **Policy Period, Coverage Territory**
>
> Under Section **I** - Property:
>
> a.     We cover loss or damage commencing:
>
> > (1)     During the policy period shown in the Declarations;
> >
> > …

**Exhibit 1,** Form BP 00 03 07 13, pp. 25-26 and 29-30 of 56.

66.     The Insurance Contract also provides a number of common policy conditions, including but not limited to the following:

> **SECTION III - COMMON POLICY CONDITIONS (APPLICABLE TO SECTION I - PROPERTY AND SECTION II - LIABILITY)**
>
> …
>
> B.     **Changes**
>
> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.
>
> C.     **Concealment, Misrepresentation Or Fraud**
>
> This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:
>
> 1.     This policy;
>
> 2.     The Covered Property;
>
> 3.     Your interest in the Covered Property; or
>
> 4.     A claim under this policy.
>
> …
>
> H.     **Other Insurance**
>
> 1.     If there is other insurance covering the same loss or damage, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.
>
> …

**L.** **Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

**Exhibit 1,** Form BP 00 03 07 13, pp. 53-56 of 56.

67.     Virginia law requires the Insured to mitigate any further damage from occurring after discovery or notice of the property damage.

68.     By enumerating certain provisions of the Insurance Contract, Westfield does not waive its right to assert any terms, conditions, limitations, exclusions, definitions or any other provisions of the Insurance Contract.  Westfield reserves the right to assert any other specific provisions of the Insurance Contract to the extent they become relevant.

69.     Westfield files the instant Complaint for Declaratory Judgment asking this Court to declare that Westfield has no duty under the Insurance Contract to indemnify ATM Storage, State Storage, or any other person or entity in connection with the Claim and/or the alleged property damage at the Loss Location, and to seek reimbursement from the Defendants for any proceeds paid by Westfield if this Court determines that the Defendants, or any of them, made material misrepresentations to Westfield in the submission of the Claim, including misrepresentations or concealment regarding the date of the alleged loss and/or damage to the Property.

70.     An actual, immediate controversy exists between Westfield and the Defendants to determine the obligations of the Parties arising out of the alleged property damage at the Loss Location and the resulting Claim.

## FIRST REQUEST FOR DECLARATORY JUDGMENT

### The Insurance Contract Only Applies To Damage That
### Commences During the Policy Period

71.     Westfield restates the preceding and following allegations of this Complaint for Declaratory Judgment as if fully set forth herein.

72.     ATM Storage asserted in the Donegal Claim that the alleged hail damage to the Property occurred on May 10, 2018.

73.     To the extent that (1) hail damage occurred at the Property and (2) the hail damage occurred prior to the inception of the Westfield Insurance Contract, such damage would not be covered under the Westfield Insurance Contract.  See **Exhibit 1**, Form BP 00 03 07 13, pp. 29-30 of 56.

74.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify ATM Storage, State Storage, or anyone else, for any damages related to the alleged property damage and/or the resulting Claim on the grounds and to the extent that any alleged hail damage occurred prior to the effective dates of the Westfield Insurance Contract.

## SECOND REQUEST FOR DECLARATORY JUDGMENT

### The Insurance Contract Does Not Provide Coverage for the Claim
### Because ATM Storage Failed to Provide Prompt Notice of the Claim

75.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

76.     ATM Storage has alleged that hail damage occurred at the Property on May 24, 2020.

77.     ATM Storage did not notify Westfield of the alleged hail damage until February 24, 2021, nine months after the alleged damage occurred.

78.     The Insurance Contract does not provide coverage for the damages asserted in the Claim because ATM Storage failed to provide prompt notice to Westfield of the alleged loss or damage to the Property after the alleged property damage occurred, pursuant to the Duties in the Event of Loss or Damage.  **Exhibit 1,** Form BP 00 03 07 13, p. 25 of 56.

79.     A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Insurance Contract determined and avoid the possible accrual of damages.

80.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify ATM Storage, State Storage, or anyone else, for any damages related to the Claim on the grounds and to the extent that the damages sought are specifically excluded under the "late notice" condition in the Insurance Contract.

## THIRD REQUEST FOR DECLARATORY JUDGMENT

### The Insurance Contract Does Not Provide Coverage for the Claim Because ATM Storage Failed to Mitigate Damages

81.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

82.     The Insurance Contract does not provide coverage for the damages alleged in the Claim because Virginia law required the Insured to mitigate any further damage from occurring after discovery or notice of the damage to the Property.

83.     The Insurance Contract does not provide coverage for the damages alleged in the Claim because ATM Storage failed to take all reasonable steps to protect the Property from further damage at or after the alleged Loss occurred, in violation of the Duties in the Event of Loss Or Damage.  **Exhibit 1**, Form BP 00 03 07 13, p. 25 of 56.

16

84.     The Insurance Contract excludes coverage for damages caused by or resulting from neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.  **Exhibit 1**, Form BP 00 03 07 13, p. 21 of 56.

85.     A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Insurance Contract determined and avoid the possible accrual of damages.

86.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify ATM Storage, State Storage, or anyone else for any alleged damages on the grounds and to the extent that ATM Storage failed to mitigate its damages.

## FOURTH REQUEST FOR DECLARATORY JUDGMENT

**The Insurance Contract Does Not Provide Coverage for the Claim
Because ATM Storage and/or State Storage
Made Material Misrepresentations, Concealed Material Facts, or Acted Dishonestly
During the Submission of the Claim**

87.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

88.     The Insurance Contract excludes coverage for damage caused by or result from dishonest acts by the insured, ATM Storage, or anyone else, including State Storage, having an interest in the Property.  **Exhibit 1**, Form BP 00 03 07 13, p. 21 of 56.

89.     ATM Storage acted dishonestly when it failed to report the truthful date of loss when ATM Storage reported the Claim to Westfield.

90.     ATM Storage acted dishonestly when it failed to advise Westfield of the prior Donegal Claim.

91.     ATM Storage acted dishonestly when it failed to advise Westfield that it had sold the Property to State Storage.

92.     State Storage acted dishonestly when it failed to advise Westfield of its interest in the Property.

93.     State Storage acted dishonestly to the extent that it was aware of ATM Storage's misrepresentations and concealment of material facts and failed to advise Westfield of the same.

94.     The Insurance Contract is void in any case of fraud by ATM Storage as it relates to the Insurance Contract at any time. **Exhibit 1,** Form BP 00 03 07 13, p. 54 of 56.

95.     ATM Storage committed fraud when it filed the Claim with Westfield with actual knowledge that any hail damage had occurred prior to the effective dates of the Westfield Insurance Contract.

96.     The Insurance Contract is also void if ATM Storage or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

      1.     This policy;
      2.     The Covered Property;
      3.     Your interest in the Covered Property; or
      4.     A claim under this policy.

**Exhibit 1,** Form BP 00 03 07 13, p. 54 of 56.

97.     ATM Storage intentionally concealed the fact that it was selling, or had sold, the Property.

98.     ATM Storage intentionally concealed the information regarding its prior claim for hail damage with Donegal.

99.     ATM Storage intentionally concealed and/or misrepresented the nature of the hail damage at the Property, the alleged date of loss for the Claim, and/or its financial interest in the Property.

100.     A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Insurance Contract determined and avoid the possible accrual of damages.

101.     Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to indemnify ATM Storage, State Storage, or anyone else for any alleged damages to the Property as a result of hail damage on the grounds and to the extent that ATM Storage and/or State Storage committed fraud, and/or made misrepresentations of materials facts, and/or concealed material facts during the submission of the Claim.

## FIFTH REQUEST FOR DECLARATORY JUDGMENT

**The Insurance Contract Does Not Provide Insurance Benefits to State Storage Because State Storage Is Not and Was Not An Insured, And Because Any Assignment of Insurance Benefits Was Not Approved By Westfield In Writing**

102.     Westfield restates the allegations in the preceding and following paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

103.     The Insurance Contract provides that "ATM's rights and duties under this policy may not be transferred without [Westfield's] written consent except in the case of death of an individual Named Insured."  **Exhibit 1**, Form BP 00 03 07 13, p. 56 of 56.

104.     The Insurance Contract provides that "This policy contains all the agreements between [ATM Storage] and [Westfield] concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with

our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy." **Exhibit 1**, Form BP 00 03 07 13, p. 54 of 56.

105.    ATM Storage assigned its rights under the Insurance Contract to State Storage without obtaining written consent from Westfield. **Exhibit 4.**

106.    ATM Storage's purported Assignment of benefits under the Insurance Contract to State Storage is null and void as to Westfield because ATM Storage failed to seek written approval for the Assignment of insurance benefits from Westfield prior to such Assignment.

107.    ATM Storage's purposed Assignment of benefits under the Insurance Contract to State Storage is null and void as to Westfield because ATM Storage failed to notify Westfield that ATM Storage was selling the Property.

108.    ATM Storage's purposed Assignment of benefits under the Insurance Contract is null and void as to Westfield because Westfield did not issue an endorsement to reflect any assignment to State Storage.

109.    Westfield has no duty under the Insurance Contract to provide any insurance benefits under the Insurance Contract to State Storage.

110.    A controversy of a justiciable nature presently exists between the parties, which demands a declaration by the Court, so that Westfield may have its rights and duties under the Insurance Contract determined and avoid the possible accrual of damages.

111.    Accordingly, Westfield seeks a declaration from this Court that Westfield has no duty to provide any insurance benefits to State Storage under the Insurance Contract on the grounds that any purported Assignment of benefits from ATM Storage to State Storage is null and void as to Westfield because ATM Storage failed to comply with the provisions of the Insurance Contract with respect to any such Assignment.

## RESERVATIONS

112.     Westfield reserves all of its rights under the Insurance Contract and applicable law. By seeking a declaratory judgment based on the foregoing provisions of the Insurance Contract, Westfield does not waive any potential coverage defenses pursuant to any terms, conditions, limitations, exclusions, definitions, or any other provision of the Insurance Contract. Developments in connection with this Complaint and the Claim may render additional defenses to coverage ripe for judicial determination.

113.     Westfield reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## PRAYER FOR RELIEF

WHEREFORE, Westfield respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Insurance Contract, including, but not limited to, the following:

(a)     that Westfield has no duty under the Insurance Contract to indemnify the Defendants for any alleged property damage related to the Loss and/or Claim;

(b)     that the Defendants must return any and all insurance proceeds paid by Westfield to the Defendants;

(c)     that Westfield has no obligation to provide any insurance benefits to State Storage in any event; and

(d)     that this Court provide such further and supplemental relief as it deems necessary and proper, including but not limited to, an award of costs in favor of Plaintiff Westfield.

Done this 30th day of March, 2022.

Respectfully submitted,

WESTFIELD INSURANCE COMPANY
BY MIDKIFF, MUNCIE & ROSS, P.C.


By: /s/ Diane U. Montgomery

Robert Tayloe Ross (Va. Bar No. 29614)
Diane U. Montgomery (Va. Bar No. 31850)
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place, Suite 420
Richmond, VA  23236
(804) 560-9600 (phone)
(804) 560-5997 (fax)
E-mail:  rross@midkifflaw.com
E-mail: dmontgomery@midkifflaw.com
*Counsel for Westfield Insurance Company*